IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBERT W. RUSSELL,**

    **Plaintiff,**

    v.                                Civil Action 2:18-cv-370
                                        Chief Judge Edmund A. Sargus, Jr.
                                        Magistrate Judge Jolson

**STEPHEN W. THORNTON, et al.,**

    **Defendants.**

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the undersigned for consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Doc. 1) and the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915(e)(2).

For the reasons that follow, Plaintiff's request to proceed *in forma pauperis* is **GRANTED**. Furthermore, having performed an initial screen and for the reasons that follow, it is **RECOMMENDED** that the Court **DISMISS** Plaintiff's Complaint in its entirety pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

    I.     **MOTION FOR LEAVE TO PROCEED** *IN FORMA PAUPERIS*

Upon consideration of Plaintiff's Motion for Leave to Proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and (2) (Doc. 1), Plaintiff's Motion is **GRANTED**. Plaintiff is required to pay the full amount of the Court's $350 filing fee. 28 U.S.C. § 1915(b)(1). Plaintiff's certified trust fund statement reveals that he has an insufficient amount to pay the full filing fee. (*Id.*).

Pursuant to 28 U.S.C. § 1915(b)(1), the custodian of Plaintiff's inmate trust account at the

Southeastern Correctional Institution is **DIRECTED** to submit to the Clerk of the United States District Court for the Southern District of Ohio as an initial partial payment, 20% of the greater of either the average monthly deposits to the inmate trust account or the average monthly balance in the inmate trust account, for the six-months immediately preceding the filing of the Complaint. After full payment of the initial, partial filing fee, the custodian shall submit 20% of the inmate's preceding monthly income credited to the account, but only when the amount in the account exceeds $10.00 until the full fee of $350.00 has been paid to the Clerk of this Court. 28 U.S.C. § 1915(b)(2). *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). Checks should be made payable to Clerk, United States District Court and should be sent to:

> Prisoner Accounts Receivable
> 260 U.S. Courthouse
> 85 Marconi Boulevard
> Columbus, Ohio 43215

The prisoner's name and this case number must be included on each check.

Consequently, it is **ORDERED** that Plaintiff be allowed to prosecute his action without prepayment of fees or costs and that judicial officers who render services in this action shall do so as if the costs had been prepaid. The Clerk of Court is **DIRECTED** to mail a copy of this Order to Plaintiff and the prison cashier's office. The Clerk is further **DIRECTED** to forward a copy of this Order to the Court's financial office in Columbus.

## II. INITIAL SCREEN

### A. Background

In this case, Plaintiff brings claims for violations of his civil rights based upon Defendants' alleged failure to provide him with certain documents which he contends are public information. (*See generally* Doc. 1–2). Plaintiff believes that those documents contain "evidence that exonerates and exculpates him" from his 2003 conviction for the rape, felonious

sexual penetration, gross sexual imposition, and kidnapping of his step-daughter, which resulted in his incarceration. (*Id*. at ¶ 49). More specifically, Plaintiff contends that the documents "exemplify a pattern of false accusations against multiple persons by [his] accusers." (*Id*. at ¶ 52). Plaintiff argues that, if he "had been able to make use of those documents for examination of the witnesses during trial, the witnesses' answers when faced with previous false fact patterns would have colored the outcome of the trial differently." (*Id*.). In other words, Plaintiff asserts that, if he had access to the documents at trial, he would not have been convicted. (*See id*.).

Plaintiff attempted to obtain the documents initially from the Wooster, Ohio Police Department and the North Royalton, Ohio Police Department. After those Departments denied Plaintiff's requests, he filed petitions for writs of mandamus to compel access. Plaintiff also sought post-conviction relief in the state trial court. As explained below, all of these efforts were unsuccessful. Hence, Plaintiff now seeks relief from this Court.

1. *Mandamus Action Against the Wooster, Ohio Police Department*

The Supreme Court of Ohio described Plaintiff's efforts to obtain the documents from the Wooster, Ohio Police Department as follows:

> In December 2004, Russell requested that the Wooster, Ohio Police Department provide him with copies of the following records: (1) any incident reports and statements made by Sarah Payden, Wendy Russell, and any others involved in an incident on February 12–14, 1995, (2) a full transcript of a taped recording made by an Officer Quicii of a telephone conversation between Sarah Payden and Robert Russell, (3) any statements made by Robert Hoffa and the employees of Friendly Ice Cream on the above dates relating to Sarah Payden, and (4) any and all records pursuant to an incident at Wooster High School in which Sarah Payden was involved in a fight with two other female students. Appellee, Wooster Chief of Police Stephen W. Thornton, denied Russell's request based on his belief that he was not required, under R.C. 149.43(B)(4), to provide the requested copies until Russell obtained an order from the court that sentenced him that his request was necessary to support a justiciable claim.
>
> In August 2005, Russell requested that Thornton provide him with copies of (1) any public records and incident and offense reports pertaining to Russell that were

3

maintained in Thornton's files from January 1, 1995, until the present, (2) the record, incident, or offense report for a Robert W. Russell who had allegedly exposed himself in the early 1990s, and (3) offense and incident reports pertaining to Wendy Russell, Robert W. Russell, and Sarah Payden. In his request, Russell stated, "I'm seeking records of a criminal investigation or prosecution, only offense and incident reports and any narratives thereto." Although the request was not phrased in the way he wanted, it is clear that Russell intended to specify that he requested only offense and incident reports, and not records relating to a criminal investigation or prosecution. Thornton again denied Russell's request based on R.C. 149.43(B)(4).

In September 2005, Russell responded to Thornton's second denial by stating that he was not seeking investigatory work product, but simply offense and incident reports, which he claimed were subject to immediate release. Russell then requested that Thornton provide him with copies of (1) any offense and incident reports related to an exposure incident by a Robert W. Russell in the early 1990s, (2) any offense and incident reports related to a fight at Wooster High School in February 1995 involving Sarah Payden, (3) any offense and incident reports relating to Wendy Russell in February or March 1995, (4) any offense and incident reports relating to two Wooster High School students accused by Sarah Payden of sexual molestation, (5) any offense and incident reports prepared by the Wayne County Children's Services, (6) offense and incident reports made by Sarah Payden in February or March 1995 and the transcripts and audiotape of a telephone call between Sarah Payden and Russell in February 1995, and (7) any and all incident and offense reports made by Wendy Russell in August, September, and October 1997 relating to Russell.

On September 21, 2005, the Wooster Law Director, on behalf of Thornton, again denied Russell's request, based on R.C. 149.43(B)(4), because Russell had "requested a copy of public records concerning a criminal investigation [or] prosecution." The director stated that the statute did not distinguish between offense or incident reports and investigatory work product, and Russell had not applied to the judge who imposed his sentence for the release of the records.

On December 12, 2005, Russell filed a petition in the Court of Appeals for Wayne County for a writ of mandamus to compel Thornton to comply with the Ohio Public Records Act, R.C. 149.43, by providing him with copies of (1) any offense or incident reports pertaining to Robert W. Russell, D.O.B. 1–28–39, formerly of Miller Lake Road, Wooster, Ohio 44691, for 1993 through 1997, (2) any and all offense and incident reports from 1990–1993 that pertained to a Robert W. Russell, also of Wooster, Ohio, who was cited for indecent exposure, (3) any and all offense and incident reports arising out of incidents dated February 14, 1995, to May 1995 as they related to Robert W. Russell, his wife Wendy Russell, and his stepdaughter Sarah Payden, (4) any and all offense and incident reports relating to the false accusations against two Wooster High School male students who allegedly molested Sarah Payden in January or February 1995, (5) any and all offense and incident reports relating to a fight at Wooster High School in which Sarah Payden was beaten

4

by two female students after accusing their boyfriends of sexual conduct, (6) any complaints or affidavits filed by Sarah Payden in 1995 pertaining to Russell, and (7) any audio, with a full certified transcription, relating to a telephone call between Sarah Payden and Russell around February 14, 1995. On December 20, 2005, Thornton filed a motion to dismiss Russell's petition for failure to state a claim upon which relief can be granted. Russell filed a memorandum in opposition.

On February 15, 2006, the court of appeals granted Thornton's motion and dismissed Russell's petition.

*State ex rel. Russell v. Thornton*, 2006-Ohio-5858, ¶¶ 2–9, 856 N.E.2d 966, 967–68.

Plaintiff appealed to the Supreme Court of Ohio, asserting that the court of appeals erred in dismissing his mandamus petition. *Id*. at ¶ 9. The Ohio Supreme Court noted that the statute that "sets out the requirements for an inmate to obtain public records[ ] clearly was drafted to restrict the ability of inmates to obtain what would otherwise be easily obtainable by noninmates." *Id*. at ¶ 15 (citing O.R.C. § 149.42(B)(4), now O.R.C. § 149.43(B)(8)). The statute provides, in relevant part that:

> A public office or person responsible for public records is not required to permit a person who is incarcerated pursuant to a criminal conviction . . . to obtain a copy of any public record concerning a criminal investigation or prosecution . . . , unless the request to inspect or to obtain a copy of the record is for the purpose of acquiring information that is subject to release as a public record under this section and the judge who imposed the sentence or made the adjudication with respect to the person, or the judge's successor in office, finds that the information sought in the public record is necessary to support what appears to be a justiciable claim of the person.

Ohio Rev. Code Ann. § 149.43(B)(8). The Supreme Court of Ohio held that, because Plaintiff failed to obtain a finding from the sentencing judge that "the information sought in the public record is necessary to support what appears to be a justiciable claim," he has failed to satisfy the statutory requirement for access to these records. *State ex rel. Russell*, 2006-Ohio-5858, at ¶ 16. Thus, the Ohio Supreme Court affirmed the judgment of the court of appeals dismissing the petition for a writ of mandamus. *Id*. at ¶ 18.

Justice Pfeifer dissented, and Chief Justice Moyer concurred with the dissenting opinion.

5

*Id.* at ¶¶ 19–22. Although Justice Pfeifer agreed that the statute sets forth heightened requirements on an inmate seeking a public record, he found the statute inapplicable because Plaintiff's request was not for records "concerning a criminal investigation or prosecution." *Id.* at ¶ 19. Justice Pfeifer explained:

> Russell primarily requested certain offense and incident reports. In *State ex rel. Rasul–Bey v. Onunwor* (2002), 94 Ohio St.3d 119, 120, 760 N.E.2d 421, we stated, "Offense and incident reports initiate criminal investigations but are not part of the investigation." *See State ex rel. Beacon Journal Publishing Co. v. Maurer* (2001), 91 Ohio St.3d 54, 56, 741 N.E.2d 511 ("incident reports initiate criminal investigations but are not part of the investigation"). Based on this precedent, it is readily apparent that offense and incident reports are not part of either the investigation or the prosecution. Thornton does not even contend that the requested offense and incident reports concern any criminal investigation or prosecution.

*Id.* at ¶ 21. Thus, Justice Pfeifer noted that, "insofar as Russell's mandamus claim relates only to offense and incident reports," the court appeal's decision dismissing the mandamus petition was in error. *Id.* at ¶ 22.

Plaintiff sought reconsideration by the Ohio Supreme Court, which denied his request. *See State ex rel. Russell v. Thornton*, 2007-Ohio-152, 860 N.E.2d 769.

### 2. *Mandamus Action Against the North Royalton, Ohio Police Department*

Plaintiff likewise requested that "North Royalton Police Chief Paul M. Bican, provide him with access to certain records, including offense and incident reports and records relating to certain people." *State ex rel. Russell v. Bican*, 2007-Ohio-813, ¶ 3, 862 N.E.2d 102, 103. The Supreme Court of Ohio described Plaintiff's efforts to obtain the documents from the North Royalton, Ohio Police Department as follows:

> Chief Bican denied Russell's requests because under R.C. 149.43(B)(4), he was not required to provide copies of the requested records until Russell obtained an order from his sentencing court finding that his request was necessary to support a justiciable claim.
>
> In December 2005, Russell filed a petition for a writ of mandamus to compel Chief Bican to provide him with copies of the requested records pursuant to R.C. 149.43,

6

the Ohio Public Records Act. Chief Bican filed a motion to dismiss the petition. The court of appeals granted Chief Bican's motion and dismissed Russell's mandamus petition.

The court of appeals did not err in dismissing the petition. As we recently held in a case involving a similar public-records claim by Russell, Russell's failure to first obtain a finding from his sentencing judge that the information sought in the requested records is necessary to support a justiciable claim precludes his entitlement to them under R.C. 149.43(B)(4):

> "The language of the statute is broad and encompassing. R.C. 149.43(B)(4) clearly sets forth heightened requirements for *inmates* seeking public records. The General Assembly's broad language clearly includes offense and incident reports as documents that are subject to the additional requirement to be met by inmates seeking records concerning a criminal investigation or prosecution. The General Assembly clearly evidenced a public-policy decision to restrict a convicted inmate's unlimited access to public records in order to conserve law enforcement resources.
>
> * * *
>
> "Because Russell failed to obtain a finding from the sentencing judge that 'the information sought in the public record is necessary to support what appears to be a justiciable claim,' he has failed to satisfy the statutory requirement for access to these records. R.C. 149.43(B)(4)." (Emphasis sic.) *State ex rel. Russell v. Thornton,* 111 Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶ 14–16.

*State ex rel. Russell v. Bican*, 2007-Ohio-813, ¶¶ 3-9, 862 N.E.2d 102, 103–04. Consequently, the Supreme Court of Ohio found O.R.C. § 149.43(B) applicable, and affirmed the court of appeals' judgment dismissing Plaintiff's petition for a writ of mandamus because Plaintiff failed to obtain a finding from the sentencing judge that "the information sought in the public record is necessary to support what appears to be a justiciable claim." *Id*. at ¶ 9.

### 3. Post-Conviction Relief

While a direct appeal of Plaintiff's conviction was pending, Plaintiff also filed a petition for post-conviction relief in the trial court. (*See* Doc. 1-2, Ex. D). Following "eleven years of cross-filings between Russell and the state, the trial court issued written findings of fact and

7

conclusions of law denying the petition." *State v. Russell*, No. 103604, 2016 WL 1182623, at *1 (Ohio Ct. App. Mar. 24, 2016). Plaintiff appealed. *See id*.

In addition to five other assignments of error, Plaintiff argued "[i]neffective assistance of trial counsel for ignoring defendant's consistent demand to secure offense and incident reports from North Royalton and Wooster, Ohio which would have confirmed critical dates leading to the indictment dismissal." *Id*. He likewise argued that an "[a]buse of discretion and vindictive series of Rico-level predicate acts by Judge Villanueva by withholding the required judgment for over 10.5 years in violation of Criminal Rule 35." *Id*.

The appellate court determined that the trial court did not issue its decision denying the petition until four years after Plaintiff's last filing in support. *Id*. at *2. It agreed that the four-year delay was in violation of Crim. R. 35(C) and was excessive. *Id*. However, the appellate court found that Plaintiff failed to demonstrate prejudice, and it found "none in the record." *Id*. at *3. That is, "[a]fter independently reviewing Russell's petition and supplemental filings," the appellate court found "that the grounds raised therein are insufficient to justify relief from his convictions." *Id*. Additionally, the appellate court held that issues pertaining to the "effectiveness of . . . trial counsel, prosecutorial misconduct, and judicial misconduct" were "either raised on direct appeal or could have been raised on direct appeal." *Id*. at *4. Thus, res judicata barred those claims. *Id*.

### 4. *The Instant Case*

Having been unsuccessful in his attempts to obtain the documents by other means, Plaintiff filed the instant Complaint for declaratory judgment in this Court on April 18, 2018. (Doc. 1-2). Plaintiff names a number of Defendants, who fall into three separate categories. Specifically, Plaintiff names judges (Diane Karpinski, Kenneth A. Rocco, Mary Eileen Kilbane, Maureen

O'Connor, Terrence O'Donnell, Judith Ann Lanzinger, Lynn Slaby, Clair E. Dickinson, Donna J. Carr, Alice Robie Resnick, José A. Villanueva, Kathleen A. Keough, and Sean C. Gallagher (collectively "the Defendant Judges")), prosecutors (William D. Mason, Marilyn Barkley Cassidy, John R. Mitchell, Paul M. Soucie, T. Allen Regas, Diane Smilanic (collectively "the Defendant Prosecutors")), and city officials (Stephen W. Thornton, Richard P. Benson, Jr., Paul M. Bican, and Thomas P. O'Donnell (collectively "the City Officials")).

In his sole claim for relief, Plaintiff alleges a violation of rights under 42 U.S.C. § 1983, arising from Defendants' refusal to provide him "discoverable evidence and offense and incident reports," which would have allowed him to "prov[e] the lies and innuendos underlying the claims made against him…." (*Id*. at ¶ 60). In addition to other relief, Plaintiff requests "a Declaratory Judgment that orders the authorities who maintain the records [he] has rightfully sought over the years in Wayne and Cuyahoga Counties to release them to him or his counsel forthwith…." (*Id*. at ¶ 21).

The Court now performs an initial screen of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A(a).

**B. Legal Standard**

Because Plaintiff seeks redress from a governmental entity or officer or employee of a governmental entity, this Court must conduct an initial screen of the Complaint (Doc. 1-1). 28 U.S.C. § 1915A(a). The Court must dismiss the Complaint, or any portion of the Complaint, if it determines that the Complaint or claim is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b); *see Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991) ("[T]he allegations of a complaint drafted by a *pro se* litigant are held to less stringent standards

than formal pleadings drafted by lawyers...."); *Thompson v. Kentucky*, No. 86-5765, 1987 WL 36634, at *1 (6th Cir. 1987) ("Although *pro se* complaints are to be construed liberally, they still must set forth a cognizable federal claim." (citation omitted)). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).

**C. Discussion**

The Court first considers Plaintiff's claim against the Defendant Judges and the Defendant Prosecutors. After doing so, the Court examines Plaintiff's claim against the Defendant City Officials.

*1.  The Defendant Judges*

Plaintiff alleges that the Defendant Judges violated his civil rights by refusing to grant his various attempts to the documents which he contends are public information. However, judicial immunity shields judges, and other public officers, "from undue interference with their duties and from potentially disabling threats of liability." *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982). "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity is overcome only if the actions taken were not in the judge's judicial capacity and if the actions taken were in absence of all jurisdiction. *Id*. at 11–12. Because those circumstances do not apply here, the Defendant Judges are immune from Plaintiff's claim.

*2.  The Defendant Prosecutors*

Like the Defendant Judges, the Defendant Prosecutors are immune from suit. That is, prosecutors have immunity for actions taken in their capacity as prosecutors. *See Imbler v.*

*Pachtman*, 424 U.S. 409, 431 (1976) (holding that prosecutors are absolutely immune from § 1983 suits in initiating or prosecuting the State's case). Here, Plaintiff alleges generally that the Defendant Prosecutors opposed his efforts in court (*see, e.g.*, Doc. 1-2 at ¶ 46 (asserting that the Cuyahoga County prosecutors filed briefs in opposition to motions he filed "in an effort to get the judge to file the Findings of Fact and conclusions of law")) and "acted in consortium" with others "to deny [him] access to records that are subject to disclosure to citizens of the United States" (*id*. at ¶ 52). In opposing Plaintiff's efforts in court, the Defendant Prosecutors were engaged in prosecutorial acts. Consequently, they are immune from suit. *Hurst v. Ohio*, No. 2:14-cv-2594, 2015 U.S. Dist. LEXIS 9767, at *9–10, 2015 WL 1291152 (S.D. Ohio 2015) (screening complaint and recommending dismissal based on prosecutorial immunity). Concerning Plaintiff's allegation that the Defendant Prosecutors acted with others to deprive him of the documents, Plaintiff's allegations fail to contain sufficient factual matter to state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678. Thus, Plaintiff fails to state a claim against the Defendant Prosecutors.

### 3. The Defendant City Officials

As set forth above, Plaintiff pursued mandamus actions against the Wooster, Ohio Police Department and the North Royalton, Ohio Police Department and their officials in an effort to obtain the documents. Plaintiff was unsuccessful in those actions because he failed to comply with O.R.C. § 149.43(B)(8)'s requirement that he obtain a finding from the sentencing judge that "the information sought in the public record is necessary to support what appears to be a justiciable claim." *See supra* Section I(A)–(B). By asserting a claim against the Defendant City Officials here, Plaintiff is seeking reconsideration of those decisions. However, the *Rooker-Feldman* doctrine prevents a litigant from collaterally attacking a state court judgment by filing a civil rights

11

complaint. *Ritter v. Ross*, 992 F.2d 750, 754 (7th Cir. 1993); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). Stated simply, the United States District Court does not have jurisdiction to review state court judgments. *See Coleman v. Governor of Michigan*, 413 F. App'x. 866, 870 (6th Cir. 2011) (noting that the *Rooker–Feldman* doctrine "prohibits district courts from conducting appellate review of state court decisions"). Only the United States Supreme Court has jurisdiction to review a case litigated and decided in a state court. *Id.*; *Gottfried v. Medical Planning Servs.*, 142 F.3d 326, 330 (6th Cir. 1998). Because the state court judgments have already been entered and Plaintiff is seeking reconsideration of those decisions in a federal forum, this Court lacks subject matter jurisdiction over Plaintiff's claim against the Defendant City Officials.

### D. Conclusion

Having performed an initial screen, for the reasons set forth above, it is recommended that Plaintiff's Complaint be **DISMISSED**. (Doc.1-2).

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: May 2, 2018
/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE